IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 17-CR-146** |
| | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **DARRELL L. BRYANT,** | : | |
| **GITFY KUSI,** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants' Joint Motion to Suppress. (ECF No. 59). The case involves an alleged health care fraud: Defendants Darrell Bryant and Gifty Kusi were allegedly fraudulently prescribing medication to patients who did not request it and billing Medicaid for the prescriptions. (*See, e.g.* ECF No. 4 at 13, ¶58). The Defendants allegedly also improperly billed Medicaid for patient services. For example, the indictment alleges that patients were given coloring books to pass the time during which they ostensibly had an appointment scheduled, or were given group therapy, but this time was nevertheless billed to Medicaid as individual psychotherapy sessions. (*See, e.g.* ECF No. 4 at 17, ¶82; *Id.* at 16, ¶¶75-77).

The Defendants moved to suppress the medical records seized by the Government in this case. For the reasons below, this Court **DENIES** the Defendants' Motion to Suppress.

## II. FACTS

Defendants have moved to suppress the medical records in this case, arguing that they were obtained in violation of a federal privacy regulation. Specifically, 42 U.S.C. § 290dd-2(a) and 42 C.F.R. § 2.61 require that the government secure both a search warrant *and* a court order to obtain medical records of patients seeking treatment for substance abuse. In the absence of patient consent, disclosure may be made only "if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. §290dd-2(b)(2)(C).

The Ohio Attorney General's (AG's) Office had an investigation into a physician who was allegedly illegally providing Suboxone. Through that investigation, the AG's office learned of Defendants Bryant and Kusi, who had a disagreement with the owner(s) of the clinic and subsequently left to start their treatment center. This became Health & Wellness Medical Center, LLC (HWMC). HWMC was operational in mid- to late-2014, and by June 2015, HWMC, by and through Defendant Bryant, had signed a Medicaid provider agreement. This gave HWMC a Medicaid provider number and obligated Defendants to comply with state and federal rules and regulations. (ECF No. 61 at 3).

As the AG's office continued this investigation, it sought a series of court orders to obtain patient treatment records. The record includes orders ("Orders") from the Franklin County Court of Common Pleas which authorize "persons or agencies who help the Attorney General's Office investigate Medicaid fraud" to have access to the records. (ECF No. 65, Ex. 1 at 1). On January 10, 2014, Judge Charles Schneider, Administrative Judge for Franklin County Court of Common Pleas ordered the Ohio Department of Medicaid (ODM) to "disclose relevant documents to the Attorney General's Office." (ECF No. 65, Ex 1 at 1). On January 27, Judge Schneider signed an

order authorizing the records seized as part of this investigation – identifying it by the internal

docket number – to be shared with the Department of Justice (DOJ), Federal Bureau of

Investigation (FBI), Drug Enforcement Agency (DEA), and other named state and federal

agencies. (ECF No. 65, Ex. 2 at 1). The AG's office subsequently sought orders on April 14,

2014; December 19, 2014; July 27, 2015; and August 18, 2016. (ECF No. 65, Ex. 2-5).

Each of these orders contains language authorizing the AG's office to share information

and records seized with federal agencies involved in the investigation, in addition to language

detailing patient privacy protection procedures. This privacy protection language is the same

across several orders, indicating this is roughly boilerplate language that the Court of Common

Pleas has used repeatedly to authorize the Medicare Fraud Unit to investigate properly while

being mindful of the purpose of the privacy regulations. (*See, e.g.* ECF No. 65, Ex. 3 at 3). In

addition, there are eight federal search warrants, signed by magistrate judges, which were

executed by state and federal agencies. (ECF No. 59 Ex. 1-8).


### III. Analysis

Defendants complain that while these orders may allow the Ohio AG's office to "re-

disclose" these records to other agencies, they do not allow the FBI or DEA to "stand in the

shoes" of the Ohio AG and use the orders to seize evidence. Defendants argue that because the

state and the federal governments are separate sovereigns, "the authorities…are not

interchangeable." (ECF No. 74 at 3). In response, the government notes that there is no specific

provision that each agency must separately seek its own court order. (ECF No. 61, at 10).

This Court analyzed Defendants' argument in two steps: first, whether state and federal agencies must obtain separate court orders to comply with the privacy regulations; and second, whether Defendants may properly make a third-party Fourth Amendment claim.

### 1. The Privacy Regulations

The relevant privacy regulations, 42 C.F.R. §2.66(a)(1), specify that an order "authorizing the disclosure or use of patient records…in connection with a criminal…matter may be applied for by any…agency having jurisdiction…". The regulations further provide that information obtained as a result of such an order may not be used to prosecute a patient. 42 C.F.R. § 2.66(d)(2). The court orders must "limit disclosure to those law enforcement and prosecutorial officials who are responsible for, or are conducting, the investigation or prosecution…" 42 C.F.R. § 2.65(e)(2).

As the Government correctly notes, the regulations do not require separate orders from each agency involved in the investigation or prosecution. Rather, the language of the regulation contemplates that agencies might cooperate during an investigation. When the text requires that court orders limit disclosure, it uses the plural: "those law enforcement and prosecutorial *officials*…" (emphasis added). In addition, the regulations do not distinguish between state and federal agencies, nor do the regulations limit which courts have the power to issue these orders.

In addition to arguing that federal agencies were required to obtain separate court orders for the medical records, the Defendants argue that the Court of Common Pleas was not competent to issue those orders in this case. According to the Sixth Circuit, states have the power to "determine when a person is authorized to approve warrants, where that person has the authority to approve warrants, and what type of warrants that person is allowed to approve."

4

*United States v. Master*, 614 F.3d 236, 241. The powers of Magistrate Judges are to be determined with reference to state law. Any other conclusion would "allow federal courts to completely undermine state determinations of who is an authorized magistrate..." *Id.* In addition to state specifications, the Supreme Court has said that Magistrate Judges must meet two standards. A Magistrate Judge "must be neutral and detached, and [she] must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972).

Taken together, *Shadwick* and *Master* indicate that warrants are issued from a "court of competent jurisdiction" when they are authorized by a judge in good standing who is "neutral and detached" and who follows the laws governing warrants as set out by the state. There is nothing in the record to suggest any complaints about the neutrality or detachment of the judges of Franklin County who signed these Orders.

Defendants cite two cases for the proposition that the orders in this case are not from a court of competent jurisdiction. However, these cases are not analogous to the case at bar. In one case, the government deliberately sought a warrant from a retired judge rather than calling an available, active judge. *United States v. Scott,* 260 F.3d 512, 515 (6th Cir. 2001). In *Master,* a warrant was issued by a judge from a neighboring county. *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010). No analogous defect is present, or has been alleged, in this case.

### 2. The Exclusionary Rule

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ——" U.S. Const. Amend. IV. When a "search is undertaken by law enforcement

officials to discover evidence of criminal wrongdoing, ... reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California,* 134 S. Ct. 2473, 2482 (2014) (internal quotation marks and citation omitted). A warrant "ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Id.* (internal citation omitted).

The exclusionary rule "prohibits introduction into evidence of tangible materials seized during an unlawful search." *Murray v. United States,* 487 U.S. 533, 536 (1988) (citing *Weeks v. United States,* 232 U.S. 383 (1914)). It also prohibits the introduction of "fruit of the poisonous tree," or "derivative" evidence that is the "product of the primary evidence, or that is otherwise acquired as an indirect result of an unlawful search." *Id.* at 536-37; *see also Wong Sun v. United States,* 371 U.S. 471, 484-85 (1963).

However, in order to assert a Fourth Amendment claim for which suppression would be the proper remedy, a defendant must stand on her own two feet; third-party standing is rarely available. A person who argues the government has violated her right to privacy must have had the expectation of privacy in the first place. The foundational case divides this analysis into two steps: by their conduct, did a person exhibit an expectation of privacy? And is that expectation of privacy one that society is prepared to recognize as reasonable? *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

In this case, the Defendants' argument must fail for lack of standing. They cannot assert a third-party privacy claim on behalf of their patients. The *Katz* test does not apply to Defendants because it was not their information to keep private: they could not exhibit an expectation of privacy, and society could not contemplate that privacy as reasonable, because there is no personal identifying treatment information *of the Defendants* in those records. The privacy

regulations shield the patient who is receiving treatment. In addition to the titles of the statute and regulation, Congressional intent that the patients are the focus is made further evident in the redaction procedures outlined, and in the prohibition on prosecuting patients whose treatment information is released by court order. Nothing in the statutes or the regulations gives an indication that these statutes seek to protect the privacy of the doctors (or other health care professionals, as Defendants here are pharmacists). Defendants are thus unable to make out a Fourth Amendment violation on the grounds that their own privacy has been infringed, and neither may they assert third-party standing on behalf of their patients.

## IV. CONCLUSION

This Court finds that the court orders issued by the Franklin County Court of Common Pleas were within that court's jurisdiction to issue. Further, that court was authorized to permit the Ohio AG's office to share the records with federal agencies taking part in the investigation. Defendants may not assert third-party standing, because the relevant statutes and regulations concern patient privacy and there has been no infringement on Defendants' privacy.

For the reasons above, the Defendants' Joint Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Judge**

**Dated: November 30, 2018**