IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:17CR146 |
| | ) | |
| Plaintiff, | ) | JUDGE MARBLEY |
| | ) | |
| v. | ) | |
| | ) | |
| DARRELL BRYANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully request this Court deny Defendant Bryant's Rule 29 Motion for a Judgment of Acquittal. The government presented sufficient evidence which proved Bryant's guilt beyond a reasonable doubt of one count of conspiracy to commit health care fraud and three counts of health care fraud. The reason this court should deny Bryant's motion are discussed more fully in the accompanying memorandum in support.

**I.  MEMORANDUM IN SUPPORT**

Defendant Darrell Bryant was charged with one count of Conspiracy to Commit Health Care Fraud, in count 1 of the Indictment, and four counts of Health Care Fraud, in counts 2 through 5 of the Indictment. All counts related to fraudulent billings submitted to the Ohio Medicaid program. Count 2 related to billing the Ohio Medicaid program for compound creams not provided to patients; Count 3 related to billing the Ohio Medicaid program for compound creams that were not medically necessary; Count 4 related to billing the Ohio Medicaid program

for counseling services not provided or provided in a group setting; and Count 5 related to billing the Ohio Medicaid program for counseling services performed by unqualified individuals, who were not properly supervised.  Beginning on December 3, 2018, and lasting through December 14, 2018, the government presented numerous witnesses and exhibits at trial. On December 18, the Jury returned a verdict convicting defendant Darrell Bryant of Counts 1, 3, 4, and 5. The Jury acquitted defendant Darrell Bryant on Count 2. For the reasons set forth below, the evidence presented at trial was sufficient to prove Bryant guilty beyond a reasonable doubt of Counts 1, 3, 4, and 5.

## II. LAW

After a jury verdict, the Rules of Criminal Procedure provide that a defendant "may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict…." Fed. Rule of Crim. Pro. 29(c)(1). Criminal Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. Rule of Crim. Pro. 29(a). "In reviewing a claim that the evidence at trial was insufficient to sustain a conviction, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carter*, 465 F.3d 658, 664 (6th Cir. 2006) (quoting *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003)), cert. denied, 550 U.S. 964, 127 S.Ct. 2444, 167 L.Ed.2d 1142 (2007)).

Specifically, in relation to Count 1, conspiracy to commit health care fraud, the government must prove the following elements: (1) two or more persons, conspired, or agreed, to commit the crime of health care fraud; and (2) the defendants knowingly and voluntarily joined the conspiracy. In regards to Counts 2 through 5, health care fraud, the government must prove:

(1) defendants knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program or obtain money or property from a health care benefit program by means of false or fraudulent pretenses, representations, or promises in connection with the delivery or payment of benefits, items or services under the health care benefit program; (2) the scheme related to a material fact or included a material misrepresentation or concealment of a material fact; and (3) defendants acted with the intent to defraud the health care benefit program. For the reasons set forth below, "viewing the evidence in the light most favorable to the prosecution," the evidence presented at trial was sufficient to prove Bryant guilty beyond a reasonable doubt of Counts 1, 3, 4, and 5.

### III. FACTS

The following evidence was presented at trial, through witnesses and exhibits. Darrell Bryant and Gifty Kusi are husband and wife, both licensed pharmacists, who owned and operated Health & Wellness Pharmacy (HWP), located at 5050 Blazer Parkway, in Dublin, Ohio. HWP also operated a location within Sav-a-lot, located at 2200 Mock Road, Columbus, Ohio. Bryant and Kusi also owned and operated Health & Wellness Medical Center (HWMC), located at 6810 Perimeter Drive, Dublin, Ohio. Jornel Rivera, a licensed physician, was the medical director at HWMC. (*See Stipulations-Doc.79*.)

The Ohio Medicaid program is a health care benefit program. Bryant signed Medicaid provider agreements with the Ohio Department of Medicaid (ODM) and CareSource, a Medicaid Managed Care Organization, on behalf of HWP and HWMC. (*Id.*; *see Government's Exhibits 100, 101, 102, 103, and 104.)* By signing the agreements, Bryant agreed to comply with all the rules and regulations of the Medicaid program.

Wayne Morgan, an administrator with ODM, testified as to the rules and regulations of the Medicaid program. Mr. Morgan testified that it is material to the program that Medicaid providers may only bill for services medically necessary. Morgan explained ODM relies on providers to provide truthful information when submitting claims. If ODM knew a claim was false, they would deny payment for the claim.

James Peters, testified on behalf of CareSoure, a Medicaid Managed Care Organization (MCO). Mr. Peters explained that a provider must be credentialed in order to bill CareSource, and providers sign agreements agreeing to follow the rules of the program. Mr. Peters identified the provider agreement that defendant Darrell Bryant signed on behalf of HWMC. In addition, Mr. Peters outlined that CareSource relies on its providers to submit truthful claims to CareSource and only bill for services that are medically necessary.

The investigation into HWP, as described by Agent Kevin Flaharty, with the Ohio Board of Pharmacy, began based on complaints received from CareSource that its members were receiving a compound cream in the mail that had not been requested by the member, or prescribed by a physician. Special Agent (SA) Kelly Morse, through her employment with the Ohio Attorney General's Medicaid Fraud Control Unit, began an investigation into HWP, after receiving complaints regarding a Dr. Michael Kirwin, the medical director at Clinic 5. Through their joint investigation, testimony presented showed that HWP billed CareSource for compound creams for patients at Clinic 5.

Several witnesses who testified were identified by Client Number, pursuant to this Court's Order and 42 CFR 2.66. The witnesses testified they sought treatment at Clinic 5, a Columbus area drug addiction treatment clinic. (*See testimony of Clients 3, 4, 7, 8, 9, and 10.*) While at Clinic 5, they would fill their prescriptions upstairs with HWP. Patients testified HWP

staff would market a pain cream to them, while they waited at Clinic 5. Some patients were approached by the defendant Darrell Bryant about the pain cream, while waiting at Clinic 5. (*See testimony of Clients 9 and 10.*) The patients at Clinic 5 testified they did not meet with a doctor or discuss the cream with a doctor. *(See testimony of Client 3, 4, 7, 8, 9, and 10.)* Some patients told Bryant they did not want the cream. (*See testimony of Client 8.*) Others reported to HWP they did not want the cream. (*See testimony of Client 7.*) Despite this, patients still received the cream in the mail.

In addition, Dr. Jornel Rivera testified he was approached by Bryant and Kusi to sign prescriptions for these compound creams. Rivera admitted he signed prescriptions for patients he did not meet with, and that he did not determine whether the creams were medically necessary. Rivera admitted he agreed to sign off on the prescriptions at the request and direction of Bryant and Kusi.

Both defendants Bryant and Kusi gave statements to agents (which were recorded). *(See Government's Exhibits 846 and 848.)* Both Bryant and Kusi indicated they originally spoke to Dan Couri, the non-physician owner of Clinic 5, about the creams. Both admitted the creams were initially billed to CareSource under the prescribing physician of Dr. Michael Kirwin, despite not having a physical prescription. Both Bryant and Kusi admitted, at the direction of Couri, they later switched billings to Dr. Rivera, and asked him to sign prescriptions for the creams.

SA Morse testified HWP submitted claims to CareSource for payment for creams in which the patients never met with the physician, and did not want the cream. *(See Government's Exhibit 300.)* SA Morse testified the billings were originally under Kirwin, and then reversed and rebilled under Rivera. These creams were routinely billed at just under $300, which is the

threshold amount before CareSource requires prior authorization, or proof of medical necessity. *(Id; see also, testimony of Owen Neff.)*

Witnesses testified that after a falling out with Couri, Bryant and Kusi opened up their own drug treatment center called HWMC. *(See testimony of Rivera, and Lasota.)* SA Morse testified regarding the search warrants in July 2015, which were executed at both HWP and HWMC, in addition to Clinic 5. At that time, SA Morse testified the investigation was focused on the compound creams. Sometime after that, based on complaints from patients, SA Morse's investigation turned towards HWMC.

Steven Smith, the COO (Chief Operating Officer) at Sunrise Treatment Center, is a licensed counselor holding both a LPCC-S and LICDC-CS. Mr. Smith provided the jury with a detailed explanation of different types of substance abuse programs, including medication assisted treatment (MAT) programs. Mr. Smith explained the drug Suboxone, a combination of Buprenorphine and Naloxone, and how it is used to assist in the treatment of drug addiction. Mr. Smith explained the importance of providing patients counseling in connection with the medication. In addition, Mr. Smith explained what is expected of counselors when providing counseling for drug addiction. Mr. Smith explained to the jury how Chemical Dependency Counselor Assistant (CDCA)'s must be certified by the Chemical Dependency Professionals' Board, and in order to provide counseling they must be supervised by a physician or nurse, but not cannot be supervised by pharmacists.

Mr. Smith also explained billing Medicaid for MAT, based on his position as a COO of a MAT facility, his frequent contact with Medicaid, and his frequent review of the Medicaid rules to assure proper compliance and reimbursement with the program. Mr. Smith outlined his knowledge of CPT codes, or the universal language for billing health care services to insurance

companies. Specifically, Mr. Smith described CPT code 90838. Mr. Smith explained this was a 60 minute add-on counseling code that should be billed when added-on to an office visit. Mr. Smith explained that the medical provider, not a counselor, should provide the 90838 service.

Employees of HWMC testified that the clinic was owned and operated by defendants Bryant and Kusi. *(See testimony of Alyssa Idies, Shantel Milks, Nick Notturniano, Dr. Franklin DeMint, and Angela Perison.)* HWMC saw more than one hundred (100) patients a day, based on the testimony of the employees and exhibits presented at trial including the front desk schedule (Government's Exhibits 621 and 623) and the sign-in sheet (Government's Exhibit 617).  Patients who paid cash did not have to come in as frequently as those who paid with insurance. *(See testimony of Alyssa Idies, Shantel Milks, Nick Notturniano, Client 2.)* Many times, a patient never met with a physician because there were pre-signed Suboxone scripts in the patient file. *(Id.)*

Nick Notturniano testified after taking an online course, he became a CDCA. His first job was at HWMC. Mr. Notturniano stated he was "thrown in with clients" during his interview. After that, Mr. Notturniano was hired as a group counselor. During busy times he had about twenty (20) people in the room, which he later learned was not a permissible patient to counselor ratio. Mr. Notturniano stated he had minimal contact with physicians, and he was never supervised by them. Instead he reported to Kusi and Bryant, both licensed pharmacists.

Angela Perison testified she was hired by HWMC. Ms. Perison is a CLCDC-II. She testified HWMC set up group sessions, and indicated there was no one-on-one. Ms. Perison stated she saw forty (40) to fifty (50) patients a day. When asked about counseling at HWMC, she stated "there was none." Specifically, Ms. Perison said, "I would not call it group counseling." Ms. Perison also testified she never met with or consulted with physicians at

HWMC.  Ms. Perison raised concerns about the counseling with Bryant, and in response he let her go because she was "talking bad" about HWMC.

Several witnesses, including Clients 1, 2, 4, 13, 14 and 27 testified they sought drug treatment at HWMC. The witnesses indicated counseling was always in a group setting, and many of them went to "art therapy." Several Clients indicated they didn't receive counseling at HWMC, because the group size was either too large or they were just given crayons to color. Specifically, Client 14 stated it was "not real counseling" and it was "not treatment" at HWMC. Client 2 testified art therapy was "a waste of government funding" and it didn't help her. Client 13 testified she enjoyed coloring, but it wasn't really counseling. Several of the patients, including Clients 2, 13, 14 and 27, indicated Bryant was their treating physician while at HWMC. Client 2 also testified she agreed to take in a covert recorder on several occasions to record her visit at HWMC. On one occasion, Client 2 took an iPhone into HWMC and it visually recorded her visit. *(See Government's Exhibit 841.)* Portions of the video were played for the jury, in which Client 2 briefly enters a room that has several patients and children sitting. After filling out paperwork, the male employee sends Client 2 to art therapy. The video shows Client 2 coloring in art therapy, with only a few minutes discussion with a counselor. *(Id.)*

SA Morse testified in relation to the covert video, indicating Client 2's recorded visit occurred on August 23, 2016. Through SA Morse's testimony, evidence was presented that HWMC submitted claims to Medicaid. SA Morse testified she reviewed HWMC's billing data and identified the two most frequently billed CPT codes which were 99214 (an established office visit of relatively high complexity) and 90838. SA Morse explained 90838 can be utilized to bill for 60 minutes of psychotherapy with a patient. SA Morse explained 90838 is an add-on code to an office visit and must be provided by the same medical professional that provides the office

evaluation. SA Morse summarized the billings submitted to Medicaid in Government's Exhibit 301, which included a break-down of claims submitted by HWMC for counseling allegedly provided to the witnesses who testified (including Clients 2, 4, 13, 14 and 27).

### a. FRAUD SCHEME CREAMS – (Count 3)

The evidence submitted at trial proved Bryant knew it was wrong to bill Medicaid, a healthcare benefit program, for creams that were not medically necessary. However, he did so anyway.

Bryant sent an email to Michael Stewart, a pharmacist employed by HWP, illustrating his knowledge that in order to provide the compound cream, patients "have to be seen, get the prescription, (sic) then have us work with their insurance to see what is covered." *(See Government's Exhibit 712.)* However, Bryant and HWP billed compound creams under Dr. Kirwin without any prescription. After that, Bryant and HWP continued to submit false claims to Medicaid by switching the billings to Dr. Rivera, knowing he never met with the patients. Several of the prescriptions for compound creams signed by Dr. Rivera, were filled out and completed by Bryant. To further illustrate his intent to defraud Medicaid, HWP and Bryant billed the compound creams at an amount just under $300 as to avoid the threshold amount that would require prior authorization (or proof of medical necessity).

As such, HWP, through Darrell Bryant, billed CareSource for compound creams that were not medically necessary. Therefore, Bryant knowingly caused the submission of fraudulent claims to a health care benefit program; the scheme related to a material fact or included a material misrepresentation or concealment of a material fact, namely that the compound creams were legitimately prescribed and medically necessary; and he acted with intent to do so. Taken in

the light most favorable to the government, the evidence supports that Bryant committed Health Care Fraud as charged in Count 3.

### b. FRAUD SCHEME COUNSELING – (Count 4)

Defense focuses their argument on the two remaining counts, Count 4 and Count 5. Count 4 related to HWMC's billing the Ohio Medicaid program for counseling services not provided or provided in a group setting. In relation to Count 4, defense alleges "the United States failed to present competent evidence to differentiate billing requirements for group versus individual counseling." Defense Motion for Judgment of Acquittal, Doc. 96, pg. 3. Further, defense alleges "[n]o evidence was presented to demonstrate professional standards in order to prove what must take place in a therapy session…." *Id*. Defense's argument is misplaced.

The evidence submitted at trial not only demonstrated professional standards of how counseling sessions should take place, but the evidence illustrated the failure of HWMC to provide addiction treatment to those that so desperately needed it. Steven Smith outlined through his testimony how MAT should work, and the professional requirements of counseling in relation to MAT. Both Mr. Notturniano and Ms. Perison indicated the lack of counseling and failure to comply with these standards at HWMC. In addition the patients testified they did not receive counseling at HWMC.

Further, Government's Exhibit 841 showed video of the purported counseling services being provided at HWMC. Jurors could see for themselves Client 2 walking into a crowded room for several minutes, filling out paperwork, and walking out. Client 2 then goes to another room to color. A counselor sits down with her for a short period of time and then walks away, leaving her to color for the remainder of the time. Client 2 testified that Bryant would walk around the office, and that he even played basketball in the art therapy room on one occasion.

In Government's Exhibit 301, SA Morse identified billings submitted by HWMC to Medicaid for counseling, when the patients indicated they did not receive counseling. Specifically, Government's Exhibit 301, page 6 identifies claims submitted by HWMC under Dr. Michael Alexander's name for counseling allegedly provided to Client 2 on August 23, 2016, the date Client 2 recorded her visit. At no point, did the video show Alexander providing an office evaluation, or counseling to Client 2.

Taken in the light most favorable to the government, considering the testimony of HWMC employees, the testimony of the patients at HWMC, in addition to the video, the government presented proof beyond a reasonable doubt that no counseling services were provided at HWMC, and if any services were provided they were provided in a group setting (not one-on-one). Therefore, the evidence supports that Bryant committed Health Care Fraud as charged in Count 4.

    **c. FRAUD SCHEME COUNSELING – (Count 5)**

Count 5 related to HWMC billing Medicaid for counseling services performed by unqualified individuals, who were not properly supervised. In relation to Count 5, defense alleges "the United States failed to present evidence to demonstrate which, if any of the persons rendering counseling services were unqualified." Defense Motion for Judgment of Acquittal, Doc. 96, pg. 4. Again, defense's argument is misplaced.

The evidence submitted at trial, through both the testimony of Steven Smith and SA Morse indicated the CPT code 90838, the code most frequently billed by HWMC, is utilized for 60 minutes of counseling, as an add-on code to an office visit. Both Mr. Smith and SA Morse indicated the counseling should be provided by the same medical professional who performs the office visit.

Several patients, including Clients 2, 13, 14, and 27, indicated Bryant was their treating physician while at HWMC. Alyssa Idies identified Bryant's writing on several office visit notes further corroborating the testimony of Clients 2, 13, 14, and 27. The patients also testified they did not always meet with a physician. Bryant, as a pharmacist, is clearly not qualified as a medical doctor to perform either the office visit or the add-on counseling.

Ms. Perison testified she had a counseling license, but no medical license. She testified she did not have contact with the physicians at HWMC. Therefore, Ms. Perison is not qualified to provide the services in relation to 90838.

Mr. Smith testified CDCAs must be supervised by a medical doctor or a nurse if they are performing counseling services. Mr. Notturniano, a CDCA, indicated he was not supervised by anyone other than Bryant or Kusi, licensed pharmacists. Therefore, Mr. Notturniano could not provide services in relation to 90838.

In Government's Exhibit 301, SA Morse identified billings submitted by HWMC to Medicaid for counseling, almost all of which were billed under Dr. Rivera's name. Dr. Rivera indicated he did not perform counseling, was not at HWMC especially towards the end, and he did not supervise the counselors.

SA Morse testified that a second search warrant was executed at HWMC in September of 2016. At that time, Medicaid suspended HWMC. *(See Government's Exhibit 109.)* After the search warrant and Medicaid suspension, billings were submitted to Medicaid for services allegedly performed at HWMC through Dr. Michael Alexander, as evidenced by the billings submitted for Client 2's visit on August 23, 2016 and two recorded visits in September of 2016. *(See Government's Exhibit 301.)* This illustrates a clear intent to defraud Medicaid by circumventing the suspension and using another provider's name in order to receive payment.

Taken in the light most favorable to the government, a reasonable jury could believe the testimony of these witnesses and conclude the counselors were not properly qualified or properly supervised under the specific billing code used by HWMC. Therefore, the evidence supports that Bryant committed Health Care Fraud as charged in Count 5.

### d. CONSPIRACY TO COMMIT HEALTH CARE FRAUD – (Count 1)

Count 1 relates to Bryant and Kusi conspiring to commit health care fraud, as outlined in Counts 2 through 5. Both Bryant and Kusi owned and operated HWP and HWMC. Both were involved with the businesses and the billing. Both had knowledge and intent to defraud Medicaid, as described above. Therefore, taken in the light most favorable to the government, a reasonable jury could consider the testimony of the witnesses, and the exhibits presented at trial, and conclude Bryant and Kusi conspired to commit Health Care Fraud, as outlined in Count 1.

## IV. CONCLUSION

For the reasons set forth previously "viewing the evidence in the light most favorable to the prosecution," the evidence presented at trial was sufficient to prove Bryant guilty beyond a reasonable doubt of Counts 1, 3, 4, and 5. Therefore, the United States respectfully requests this Court deny Defendant's Motion for Acquittal.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Maritsa A. Flaherty_____
Maritsa A. Flaherty (0080903)
Kenneth F. Affeldt (0052128)
Assistant United States Attorneys
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715

Fax: (614) 469-2769
Maritsa.flaherty@usdoj.gov
ken.affeldt@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

s/Maritsa A. Flaherty_____
MARITSA A. FLAHERTY
Assistant United States Attorney