IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 2:17-CR-146 (1) |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE MARBLEY |
| v. | ) | |
| | ) | |
| DARRELL BRYANT, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Defendants Darrell Bryant and Gifty Kusi were charged with one count of Conspiracy to Commit Health Care Fraud, in count 1 of the Indictment, and four counts of Health Care Fraud, in counts 2 through 5 of the Indictment. All counts related to fraudulent billings submitted to the Ohio Medicaid program. Count 2 related to billing the Ohio Medicaid program for compound creams not provided to patients; Count 3 related to billing the Ohio Medicaid program for compound creams that were not medically necessary; Count 4 related to billing the Ohio Medicaid program for counseling services not provided or provided in a group setting; and Count 5 related to billing the Ohio Medicaid program for counseling services performed by unqualified individuals, who were not properly supervised.  Defendants Darrell Bryant and Gifty Kusi maintained not guilty pleas. The case proceeded to trial beginning on December 3, 2018.  The government presented numerous witnesses and exhibits at trial, which lasted through December 14, 2018. On December 18, the Jury returned a verdict convicting defendants Darrell Bryant and Gifty Kusi of Counts 1, 3, 4, and 5. The Jury acquitted defendants Darrell Bryant and Gifty Kusi on Count 2.

## LAW

The Sentencing Guidelines are advisory, based on the Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005). Sentencing judges must now impose sentences in accordance with factors provided in 18 U.S.C. §3553(a), which describes Congress's federal sentencing goals. Although the Sentencing Guidelines are no longer mandatory, a district court must still calculate and consider a defendant's sentencing range when determining an appropriate sentence. *Gall v. United States*, 552 U.S. 38 128 S. Ct. 586, 596 (2007); *Booker, supra,* 543 U.S. at 245-46. After calculating the advisory Guidelines range, the Court must consider that range along with all of the factors listed in 18 U.S.C. §3553(a) before arriving at a final sentence.

An evidentiary hearing maybe used to resolve disputed issues. *See, e.g., United States v. Jimenez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996). In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. *See* 18 U.S.C. § 3661; *see also United States v. Watts*, 519 U.S. 148, 154 (1997) (holding that lower evidentiary standard at sentencing permits sentencing court's consideration of acquitted conduct); *Witte v. United States*, 515 U.S. 389, 399-401 (1995) (noting that sentencing courts have traditionally considered wide range of information without the procedural protections of a criminal trial). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. *Watts*, 519 U.S. at 157.

## FACTS

The defendant, Darrell Bryant, is a licensed pharmacist in the State of Ohio who owned and operated Health and Wellness Pharmacy, LLC (HWP) and Health and Wellness Medical Center, LLC (HWMC) both located in Dublin, Ohio, within the Southern District of Ohio. In February 2015, Darrell Bryant married co-defendant Gifty Kusi, also a licensed pharmacist in the State of Ohio. Defendant Kusi co-owned and operated HWP and HWMC.

During the trial, the government presented evidence proving beyond a reasonable doubt that defendant Darrell Bryant knowingly executed a scheme or artifice to defraud a health care benefit program, in violation of 18 USC §1347, by causing false claims to be submitted to the Ohio Medicaid program, which is a Health Benefit Program as defined under 18 USC §24(b). Specifically, the defendant did so by billing the Ohio Medicaid program: for compound creams that were not medically necessary; for counseling services not provided or provided in a group setting; and for counseling services performed by unqualified individuals, who were not properly supervised.

Without re-trying the entire case before the court, the government seeks to highlight several facts relevant to sentencing. During the trial, the government presented evidence that in addition to the health care fraud schemes related to compound creams and counseling, defendant Darrell Bryant, a licensed pharmacist, was treating patients and acting in the capacity of a physician (in which he does not hold a license in the state of Ohio) while at HWMC. Several patients testified and identified the defendant, Darrell Bryant, as the physician who treated them. In addition, Darrell Bryant's writing was identified on the patient visit notes in the section titled "MD Notes."

Additionally, during trial the Government presented evidence that it was standard operating procedure at HWMC for physicians to pre-sign prescriptions for Suboxone, and leave these in the patient files. Front desk staff indicated the patients did not have to see a doctor if there was a pre-signed prescription in the file. During a subsequent trial of Dr. Oppong, additional witness testimony revealed that "Dr. Bryant" would see patients for follow-ups, if there was a pre-signed prescription in the file. Though defendant Darrell Bryant was not charged with violating Title 21, Section 841 of the United States Code, there was evidence presented that he violated the provisions of this statute by distributing Suboxone, a Schedule III controlled substance, completing

prescriptions for patients when in fact he was not authorized to do so.

Most importantly, while under investigation, subsequent indictment, and post-verdict, the defendant continued to engage in illegal activities. Through the course of the trial, it became apparent to the government that no conditions or set of conditions would stop the defendant and co-defendant Kusi from their continued illegal operation of multiple Suboxone clinics. By operating the clinics, which accepted and billed Ohio Medicaid, defendants continued to commit Health Care Fraud, in violation of Title 18, Section 1347 of the United States Code. By directing staff to pass out pre-signed prescriptions for controlled substances, the defendants continued to conspire to violate Title 21, Section 841 of the United States Code, and to illegally distribute controlled substances.

## APPLICATION OF §3553(A) FACTORS

The Guideline range, as calculated by the U.S. Probation Officer and agreed to by the Government, is a level thirty-two (32) with a criminal history category of I, suggesting a guideline sentence of one hundred and twenty-one (121) months to one hundred and fifty-one months (151). For the reasons set forth below, the United States believes a sentence of one hundred and twenty (120) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

### 1. (A) Nature and Circumstances of the Offense

The nature and the circumstances of the offense, as outlined in the indictment, through the course of the trial and presentence investigative report are serious. The defendant knowingly and intentionally outlined multiple schemes to defraud the Ohio Medicaid Program for nothing more than his own financial gain. In total, the defendant defrauded Medicaid out of $3,207,491.22. Medicaid is a program created in order to provide necessary health care treatment to those that cannot afford it. Instead of providing necessary treatment to those that need it most,

4

defendant Bryant fraudulently billed Medicaid for useless and unneeded compound creams, as well as sham counseling services which were nothing more than individuals sitting in a room and coloring.

In addition, the circumstances of this offense involve the defendant's operation of HWMC, an unlicensed Office-Based Opioid Treatment (OBOT) facility, under the guise of providing medication assisted treatment (MAT) to those patients suffering from opioid addiction. Under Ohio law, an OBOT must be licensed by the Ohio Board of Pharmacy, Ohio Mental Health and Addiction Services (OMHAS) certified, or CARF accreditation, yet defendant Bryant never obtained such required licensure. The seriousness of the offenses in this case cannot be understated. Many patients went to HWMC desperate for treatment of their opioid addiction. In doing so, the patients put their trust in the defendant that they would receive proper medical treatment and proper counseling. Instead, they were met by the defendant who posed as a "doctor" and counselors who simply supplied crayons.

The seriousness of the offense is highlighted by the fact the defendant further took advantage of the trust placed in him by his patients through the sexual harassment and sexual assault of several women. By instructing the doctors to pre-sign prescriptions, he had an open door to play "doctor" and place women in exam rooms alone with him. The women trusted that "Dr. Bryant" was going to help them treat their opioid addiction. The defendant not only failed to treat their addiction, but further victimized these vulnerable women in the worst way.

Opioid addiction, abuse and overdoses are at epidemic levels in the United States.  The defendant, with his extensive education, was in a unique position to help treat patients. Instead, the defendant chose to sexually assault women and turn a profit. The opioid epidemic doesn't exist without individuals, such as the defendant, who abuse their position of trust and place profit

over patient care.

## 1.  (B) History and Characteristics of the Defendant

The defendant is a 44 year-old well-educated individual. The defendant is a licensed pharmacist in the State of Ohio, and has been since 2002. In addition, the defendant has obtained two Bachelor of Science degrees, two Master of Science degrees and a Doctor of Pharmacy degree. Defendant has four (4) children total. Two of those children he shares with co-defendant Gifty Kusi, and are both under the age of two (2). The defendant does not have any known health concerns, nor does he have a significant family history. The defendant reports being raised in a single parent household, but expressed he had a close-knit bond with his mother who supported and nurtured him. The defendant does not have a significant criminal history. The government factored in the defendant's age, health, education and history into the recommended sentence.

## 2.  Need for the Sentence

In addition to the above, pursuant to 18 U.S.C. § 3553(a)(2), the Court shall consider the need for any sentence imposed, "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational training, medical care, or other correctional treatment." A significant prison sentence is appropriate in this case in order to reflect the seriousness of the offense, to satisfy the principles of both general and specific deterrence, and to adequately protect the public from future harms by the defendant. Each of these factors will be discussed in relation to how they support the recommended sentence.

### A.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

As discussed above, in paragraph 1A, the seriousness of the offense cannot be understated. The defendant was in a unique position based on his education to treat those individuals that needed it most. Instead, the defendant put his desire for financial gain and sexual gratification over the patient's needs. The defendant victimized women and those suffering from opioid addiction.

Further, the defendant did not operate alone. He concocted these schemes to defraud and dragged others into his criminal enterprise, namely Dr. Jornel Rivera, Dr. Bernard Oppong, and Dr. Michael Alexander. All three doctors have now either pled guilty or been convicted of crimes associated with defendant Bryant's schemes and illegal activity. All three doctors will inevitably lose their license to practice medicine. All three doctors indicated they too trusted defendant Bryant when they did what he told them to do.

Instead of contributing to treating the opioid epidemic, the defendant further added to the crisis. For these reasons, the recommended sentence reflects the seriousness of the offense, and promotes respect for the law.

### B.  To afford adequate deterrence to criminal conduct.

As stated earlier, the defendant has committed serious offenses. In the wake of the opioid epidemic, deterrence is key. The opioid epidemic does not exist without the actions of individuals such as the defendant, who abuse their positions of trust for financial gain. When opioid addiction is at its peak, individuals should be able to trust their addiction treatment providers.  Instead, the defendant pushed Suboxone at patients, while denying them true medical treatment or even minimal counseling. It is precisely these actions, such as the defendant's, that lead to addiction and overdose deaths and contribute to the opioid epidemic.

Therefore, to promote both general deterrence of other treatment providers, as well as

specific deterrence of the defendant, the recommend sentence is appropriate.

**C. To protect the public from further crimes of the defendant.**

From the time the Medicaid suspension was issued on September 23, 2016, until the Court revoked Defendant's bond on March 21, 2019, defendants Bryant and Kusi continued the illegal operation of an OBOT facility. Both defendants Bryant and Kusi were the *de facto* owners and operators of Alexander Recovery Center (ARC) at three locations in the Southern District of Ohio. ARC continued to bill Medicaid, through use of Dr. Alexander's Medicaid number, despite Bryant and Kusi's suspension from the Medicaid program. Dr. Alexander was used for the purposes of his name and his Medicaid number to continue billing Medicaid in violation of law and the suspension. Employees reported Bryant and Kusi are the owners and in control of all operations at ARC. Financial records obtained confirmed Bryant and Kusi controlled ARC's finances, even issuing payments to Dr. Alexander with a memo line indicating "Medicaid." During this time, Bryant and Kusi ran all operations, including running operations of the clinics by a remote video monitoring system. On February 27, 2019, no physicians were onsite at ARC, yet pre-signed prescriptions for Suboxone, a Scheduled III controlled substance, were still issued to patients at the direction of defendants Bryant and Kusi.

The defendant's overall disregard of the law, and this Court's orders to comply with it, certainly speaks to his inability to be rehabilitated. The defendant's actions clearly illustrate that a sentence of imprisonment is essential to protect the public from the defendant's continuous illegal activity. The recommended sentence of imprisonment will ensure the defendant can no longer defraud Medicaid, no longer pose as a doctor, no longer sexually assault women, and no longer illegally distribute controlled substances.

**D. To provide the defendant with needed educational training, medical care,**

**or other correctional treatment.**

While it may not be clear what could possibly assist the already well-educated defendant in preventing his continued criminal activity, a sentence at a correctional facility will certainly give defendant an opportunity to consider the nature of this offense and his conduct. Perhaps, while incarcerated, the defendant will be given the opportunity to speak to others who have been affected by the tragic consequences of drug addiction. Perhaps, while incarcerated, the defendant will find other correctional treatment that will assist him in conforming his actions to the law. What is clear, is that the defendant's continued illegal conduct will be prevented by imposing the recommended sentence.

**3.  The Kinds of Sentences Available**

Given the egregious and continuous illegal criminal conduct in this case, a prison sentence is available and appropriate. In addition to the recommend prison sentence, pursuant to Title 18, United States Code Section 3663A, an order of restitution would be appropriate. The government further requests an order of restitution in the amount of $3,207,491.22 payable to CareSource in the amount of $2,793,528.43, to Molina Healthcare of Ohio in the amount of $230,077.95, to Paramount Advantage in the amount of $84,864.97, to Buckeye Centene Corporation in the amount of $51,714.24 and to the Ohio Department of Medicaid in the amount of $47,305.63.

**4.  Sentencing Range Established for the Offense**

The Guideline range, as calculated by the U.S. Probation Officer and agreed to by the Government, is a level thirty-two (32). The defendant is a criminal history category of I, resulting in sentencing guideline range of one hundred and twenty-one (121) months to one hundred and fifty-one months (151). The defendant's conduct resulted in a sentencing range higher than the maximum penalty for the charged offenses which are ten (10) years imprisonment or one hundred

and twenty (120) months. Because the defendant's conduct was egregious and continuous (even while under indictment and post-verdict), the United States believes a sentence of one hundred and twenty (120) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

## CONCLUSION

Consideration of the above mentioned sentencing factors suggests that a sentence of one hundred and twenty (120) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Maritsa A. Flaherty
Maritsa A. Flaherty (0080903)
Kenneth F. Affeldt (0052128)
Assistant United States Attorneys
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Fax: (614) 469-2769
Maritsa.flaherty@usdoj.gov
ken.affeldt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October 2019 a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/Maritsa A. Flaherty
Maritsa A. Flaherty (OH: 0080903)
Assistant U.S. Attorney