

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| Plaintiff, : | Case No.: 2:17-cr-00146 |
| v. : | Honorable Judge Marbley |
| DARRELL L. BRYANT, and GIFTY KUSI : | |
| Defendants. : | |

**DEFENDANT GIFTY KUSI'S MOTION TO REQUEST PERMISSION TO RENT 3219 SULLIVANT AVENUE, COLUMBUS, OH 43204 TO AN ORGANIZATION LICENSED BY THE OHIO MENTAL HEALTH AND ADDICTION SERVICES (OMHAS) AND ACCREDITED BY THE COMMISSION ON ACCREDITATION OF REHABILITATION FACILITIES (CARF)**

NOW COMES Defendant Gifty Kusi without counsel moves this Court to grant a motion to be able to rent 3219 Sullivant Avenue, Columbus, OH 43204 to an OMHAS organization, SperoHealth. Defendant Gifty Kusi is without defense counsel so counsel for the United States Ken Affeldt was not contacted about this motion.

Dated: 12/18/19

Respectfully submitted,

_____
Defendant Gifty Kusi
3217 Walkerview Drive
Hilliard, OH 43026
Phone: (309) 868-0958
Email: kusi.369@gmail.com

## MEMORANDUM

CARF was founded in 1966 and is an independent, nonprofit accreditor of health and human services in Behavioral Health and Opioid Treatment Programing. (website: carf.org) OMHAS was developed by combining two government departments formerly known as the Ohio Department of Mental Health (ODMH) and the Ohio Department of Alcohol and Drug Addiction Services (ODADAS) and has the mission of providing Ohioans with high-quality mental health and addiction prevention, treatment and recovery services. (website: mha.ohio.gov)

The OMHAS and CARF accredited organization that wants to rent 3219 Sullivant Avenue is SperoHealth. (website: sperohealth.com) The SperoHealth organization has 32 CARF accredited facilities, which is the rehabilitation services equivalent of Joint Commission for hospitals. The SperoHealh organization would like to rent the medical office we own at 3219 Sullivant Avenue, Columbus, OH 43204. The SperoHealth Group would like to treat addiction patients with Suboxone at 3219 Sullivant Avenue. The SperoHealth Group will see patients that have medicare, medicaid, private insurance, and self-pay (cash). We (Darrell Bryant and Gifty Kusi) will not have any contact with the SperoHealth group nor the patients they treat. We have a Keller Williams Commercial Realtor (website: kw.com) communicating with the SperoHealth organization to negotiate the lease at fair market value (sample lease is attached) and place the organization at 3219 Sullivant Avenue. We have a property management company, Renting Ohio (website: rentingohio.com), that will collect the rent and take care of tenant issues.

WHEREFORE, I plead with this Court to grant the permission to rent 3219 Sullivant Avenue, Columbus, OH 43204 to the SperoHealth organization.

Dated: 12/18/19

Respectfully submitted,

_____
Defendant Gifty Kusi
3217 Walkerview Drive
Hilliard, OH 43026
Phone: (309) 868-0958
Email: kusi.369@gmail.com

# KUSI-BRYANT REALTY LLC.
# LEASE

THIS LEASE AGREEMENT ("Lease"), entered into this 6 day of September 2019 between Kusi-Bryant Realty LLC (hereinafter called "Lessor") and **SperoHealth, LLC** (hereinafter called "Lessee").

**PREMISES**: Lessor, in consideration of the rents and the performance of the covenants and agreements hereinafter provided for, to be paid and performed by Lessee, hereby leases to Lessee the following described premises, being situated in the State of Ohio, County of Franklin, and more particularly described as follows (the "Premises"):

<u>**3219 Sullivant Ave. Columbus, Ohio**</u>
<u>**Approximately 2,470 square feet of office medical space**</u>

**TERM**: The term for this Lease shall be 36 months commencing on the 1st day of October 2019 and terminating on the 30th day of September 2022 ("Original Term"). If Lessee is not in default under this Lease, the Lessee shall have an option to renew ("Renewal Option") this Lease for an additional _3_ year term ("Renewal Term") commencing on the expiration of the Original Term. The Renewal Term shall be under and subject to the same covenants, provisions, and agreements as stated herein except that Rent Charges shall be mutually agreed to between the parties. One hundred twenty (120) days prior to the expiration of the Original Term, Lessor shall provide written notice to Lessee of the proposed financial terms of the Renewal Term, including the proposed Rent Charges. Lessee shall then notify Lessor of its decision of whether Lessee will exercise the Renewal Option by giving Lessor ninety (90) days written notice prior to the expiration of the Original Term. If Lessee is in default of the terms of the Lease at the end of the Original Term, then the Renewal Option shall be null and void.

**POSSESSION:** Lessor shall provide a completed Premises to Lessee and Lessee shall be entitled to possession of the Premises on the first day of the term of this Lease (October 1, 2019), and Lessee shall yield possession to Lessor on the last day of the term of this Lease,(September 30, 2022) unless otherwise agreed by both parties in writing.

1

# KUSI-BRYANT REALTY LLC.
# LEASE

**RENT**: Lessee agrees to pay to the Lessor as rent for the Premises for and during the term of this Lease, the sum of (see below) per year based on (see below). Base Rent shall be paid in equal monthly installments (or pro-rated amount for any partial month) on the first day of each and every month in the amount of (see below). Base Rent shall be paid to Lessor at:

PROPERTY MANAGER:_____

ADDRESS:_____
_____

or at any other address specified by Lessor in writing to Lessee. Any payment of Base Rent received after the 10th day of the month will be subject to a TEN (10%) percent penalty. If payments of Base Rent are mailed, the date of receipt by Lessor will be considered the date of payment. If any check for Base Rent is returned to Lessor for insufficient funds or other reasons, the TEN percent (10%) late charge will be added to that payment as well as any additional charges that Lessor incurs as a result of the returned check. Rent shall be as follows:

Year 1 (8/01/2019 to 7/31/2020)   $2,100.00 / month = $25,200.00/yr.
Year 2 (8/01/2020 to 7/31/2021)   $2,100.00 / month = $25,200.00/yr.
Year 3 (8/01/2021 to 7/31/2022)   $2,268.00 / month = $27,216.00/yr.

**Operating Expenses:**

Intentionally left blank

**SECURITY DEPOSIT**: A security deposit equal to the amount of one month's of Year 1 is required, Amount of $2,100.00 ("Security Deposit"). The Security Deposit shall be paid to Lessor upon both parties' execution of this Lease and held by Lessor in trust as security for this Lease. No part of the Security Deposit shall be applied to the payment of Lessee's Rent Charges. The Lessor shall promptly (within thirty (30) days) return the Security Deposit to Lessee upon termination of this Lease if, after inspection the Premises the Lessor is satisfied that no damage has been caused by the Lessee. If such inspection reveals any damage caused by Lessee, ordinary wear and tear excepted, the Lessor should subtract a sum required for the repair of said damage from the Security Deposit. The remainder of the Security Deposit shall be refunded to Lessee.

# KUSI-BRYANT REALTY LLC.
# LEASE

### Lessor approval of Tenant Improvements by Tenant:

*UNAPPROVED ALTERATIONS.* Any physical additions or improvements to the Premises made by Tenant will become the property of Landlord. The landlord may require that Tenant, at the end of the Term and at Tenant's expense, remove any unapproved physical additions and unapproved improvements, repair any alterations and restore the Premises to the condition existing at the Commencement Date, normal wear excepted. All Alterations and Improvements are to be approved by Lessor, in writing prior to the execution of work.

**USAGE**: The Premises shall be used only as office/medical business purposes. Lessee shall not use or occupy any of the Premises for any purpose contrary to law or the rules or regulations of any public authority, including zoning restrictions, or in any manner so as to increase the cost of hazard insurance or maintenance.

**PARKING AREA**: During the Lease, Lessee and Lessee's customers, employees, and invitees, shall have an exclusive right and license to use the parking areas, driveways, service driveways, and sidewalks which shall be provided by the Lessor and shall remain under Lessor's control. Lessee shall have the right to designate specific parking areas for the use of Lessee. Lessee shall be responsible for keeping the parking lot clean of debris, litter and unwanted material(s). Lessee shall be responsible for keeping the parking areas free and clear of snow and free and clear ice.

**SIGNAGE**: Lessee at Lessee expense, shall be responsible to follow all governmental guideline for signage and installation.

**UTILITIES**: Lessee shall be solely responsible for gas, water and electric for the Premises, which are furnished to the Premises. The Lessee, upon the complete execution of lease shall schedule the assignment of utilities to their name.

**GLASS**: Lessee agrees to maintain and replace all glass which is part of the Premises and shall promptly replace any such glass which is damaged or broken and shall save Lessor harmless from any loss, cost, damage or claim resulting from such breakage or the replacement thereof, except any damage caused by Lessor, his employees or agents.

# KUSI-BRYANT REALTY LLC.
# LEASE

**PERSONAL PROPERTY**: Lessee assumes all risk of damage to or destruction, loss, or pilferage of personal property, including without limitation, vandalism, within the Premises or loss suffered by Lessee's business resulting from any cause whatsoever, and shall save and hold Lessor harmless from all claims resulting there from, except anything caused by Lessor, his employees or agents.

**LESSEE'S REPAIRS**: Lessee is to be responsible to Lessor for any and all damages or destruction to the interior of the Premises due to any burglary, vandalism, excluding acts of God, which may occur. It is also understood that Lessee will have ample burglary and liability insurance to cover any such incidents to the interior of the Premises. In the event of such occurrence, the interior of the Premises will be restored to the condition of the Premises immediately prior to such damage by Lessee. In the event a good faith dispute arises between Lessor and Lessee as to whether any damage or destruction of the Premises was due to acts of burglary or vandalism or was due to acts of God, Lessee shall only be liable to the extent its insurer will cover any liability. All repairs for unit, clogged toilets, drains, doors, door handles/locks, glass, filter change, and fire inspection are Lessee responsibility. Lessee shall be responsible in having the HVAC system service and maintained twice per year by a professional and licensed HVAC contractor. Receipts of service shall be delivered to Lessor. (Lessor shall be responsible for the exterior of the Premises).

**LESSOR'S REPAIRS**: Lessor shall maintain the exterior portion of the building of which the Premises are a part, including the roof, foundation and structural portions thereof as well as maintain the HVAC and water heater, exclusive of doors, door hardware and glass, in good repair, except for reasonable wear and tear and except such repairs as may be required thereto by reason of the acts of Lessee, its employees, agents, invitees, licensees or contractors. In such event, Lessee agrees to promptly and properly repair the same at Lessee's expense. Lessor shall make all necessary repairs to the parking areas. Lessor, its agents, contractors or employees may enter the Premises at all reasonable times, to inspect or to make repairs herein required or deemed prudent, provided that Lessor shall provide advanced notice of at least 24 hours to Lessee prior to entering the Premises, except in the case of an emergency. Lessor, shall make best efforts not to interfere with the business of Lessee when scheduling and making such repairs and Lessor and any of its agents, contractors and employees shall keep confidential any information observed and maintain the confidentiality of Lessee's business and clients, including

# KUSI-BRYANT REALTY LLC.
# LEASE

the proprietary and customer sensitive data that Lessee will maintain on the Premises.

**INSURANCE**: Lessee shall maintain during this Lease, in full force and effect, public liability insurance for its own protection and for the protection of Lessor against injuries, accidents or causes of action of every nature and kind whatsoever which are normally covered by "owner-lessee" liability insurance that may arise from the use and occupation of, in and about the premises, by Lessee. Insurance shall be with limits of not less than $200,000 for each injury to one person, $500,000 for each injury to more than one person, and $100,000.00 for property damage. Lessor shall be named as an additional insured on the policies or certificates of such coverage. Such policy or policies shall bear an endorsement to the effect that the insurer shall not cancel or modify the same without at least fifteen (15) days prior written notice to the Lessor.

**ALTERATIONS**: Lessee will not make alterations or additions to any part of the Premises without prior written consent of Lessor, such consent not to be unreasonably withheld. All such alterations and additions shall be made in accordance with all applicable laws and regulations, and permits therefore from all public authorities, as required, will be obtained and paid for by Lessee. All such changes shall remain for the benefit of the Lessor unless otherwise provided in the written consent. Lessee further agrees to pay for all alterations and/or additions and to indemnify and save harmless the Lessor from all expenses, liens, claims, suits or damages to persons, property and the Premises, arising out of or resulting from the making of said alterations or additions.

**INDEMNITY AND DAMAGES**: To the extent permitted by law, Lessee agrees to indemnify, hold harmless, and defend Lessor from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees ("Losses"), if any, which Lessor may suffer or incur in connection with Lessee's possession, use or misuse of the Premises, except in the case such Losses are caused by the action or inaction of Lessor, his employees, agents, contractors or invitees.

**FIXTURES**: At the end of this Lease, Lessee may remove such trade fixtures and shall repair any damage caused by such removal. Should Lessee have installed lighting fixtures, they shall become the property of the Lessor at the end of the Lease, except as otherwise agreed upon by the parties.

# KUSI-BRYANT REALTY LLC.
# LEASE

**FIRE INSURANCE**: Lessor agrees to carry on and maintain fire insurance and extended coverage insurance, on the buildings of which the Premises are a part, in an amount of at least 80% of their insurable value. Should the Premises be damaged or destroyed by fire or other casualty, Lessor agrees to repair, restore, or replace the Premises to a condition as good or better than before, as soon as reasonably possible after insurance adjustments have been made, but, in any event, within six (6) months after such damage or destruction. Should the Premises be rendered unusable for purposes of Lessee's business, all Rent Charges for this period shall completely abate until the repair, restoration or replacement has been completed. Should the Premises be so rendered unusable in part only, and the remaining part is suitable for the conduct of Lessee's business, then the Rent Charges shall abate proportionately based upon the USABLE space of the Premises available to Lessee for the conduct of business, until repair, restoration or replacement is completed. In either of these events, Lessee, at the end of ninety (90) days, may have the option to terminate this Lease without penalty.

**DEFAULT**: Should Lessee fail to pay the Rent Charges or other payments required of Lessee hereunder or any part thereof, for a period of ten (10) days after payment shall be due, or should Lessee fail or perform or observe any other agreements, covenant or condition on Lessee's part to be performed or observed and fail to cure such failure within fifteen (15) days after notice from Lessor specifying the failure, or should this leasehold become subject to execution, attachment or other process of law, or should Premises be vacated, abandoned or business operations of Lessee cease for a period exceeding seven (7) days, or should Lessee fail to move into or take possession of premises and open for business within thirty (30) days after Lessor shall deliver possession thereof to Lessee, or should Lessee make an assignment for benefit of creditors, file a voluntary petition in bankruptcy or for an Arrangement or Reorganization or suffer an involuntary petition to be filed against Lessee or suffer a receiver or trustee to be appointed for Lessee, or permit Lessee's fixtures or other legal process, in all or either of such events a breach of this lease shall have occurred, and should such breach be other than for payment of money and continue for thirty (30) days thereafter, then Lessor, in addition to any other remedies available, shall have the immediate right to enter and repossess the Premises by force, summary or dispossess proceedings, or otherwise, and remove there from all occupants and take and store any property at the cost of and for the account of Lessee, without becoming liable to prosecution or damages therefore, may seize and hold Lessee's fixtures as its own property, and thereupon all rights of Lessee and obligations of Lessor to Lessee hereunder shall cease but Lessee shall remain liable

---

6

for the Base Rent, less any net amount realized by Lessor from re-renting the Premises, and such liability for rent shall continue each month for the remainder of the applicable term. At any time thereafter, Lessor may terminate this Lease by a declaration to that effect. In all actions on this Lease, the parties waive trial by jury.

**QUIET ENJOYMENT**: Lessor agrees that if Lessee shall pay the Rent and shall perform and observe all the covenants and conditions of this Lease, Lessee shall have the peaceable and quiet enjoyment and possession of the Premises without hindrance by Lessor, except for matters herein specifically provided.

**SURRENDER**: When the tenancy herein created terminates, Lessee agrees to surrender the Premises to Lessor in the same or better condition than existed when Lessee entered possession, wear and tear excepted. Lessee agrees to restore walls to original condition. Lessee also agrees to return all keys for the Premises to Lessor.

**SUBLET**: It is understood that in the event Lessee desires to vacate the Premises before this Lease expires, it shall be at the discretion of Lessor to enter into negotiations with Lessee to terminate this Lease. However, should Lessor not agree to cancel Lessor's lease, then Lessee shall have the right to sublet for the balance of the remaining applicable term, and only with the prior written approval of Lessor, such approval not to be unreasonably withheld or delayed; providing Lessee remains liable for the balance of the remaining amounts due during the remaining applicable term.

**ACCESS TO PREMISES**: During the last three (3) months of the Lease or at any time that this Lease is being terminated for any reason, the Lessor or its agents may have access to the Premises, upon prior notice to Lessee and subject to the consent of Lessee, which shall not be unreasonably withheld or delayed, for the purpose of exhibiting the premises to potential lessees.
- Lessor shall have access to the Premises at all times with 24 hour prior notice to Lessee. Upon any access, Lessor and his agents, contactors and employees agree to make best efforts to cooperate with Lessee and Lessee's employees and to adhere to all confidentiality rules and regulations and any other applicable law to ensure the confidential information of Lessee and the privacy of Lessee's clients are protected and to keep confidential any information observed and maintain the confidentiality of Lessee's business and clients, including the proprietary and customer sensitive data that Lessee will maintain in the Premises.

# KUSI-BRYANT REALTY LLC.
# LEASE

- Lessor will make best efforts to reach Lessee at numbers provided if access is needed during non-business hours and with at least 24 hours prior notice.

Sixty days prior to the termination of this Lease, Lessor may exhibit a sign in the Premises window for re-renting purposes, provided such sign shall not block the signage of Lessee, which identifies Lessee's business.

**HOLDING OVER**: If Lessee maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Lessee shall pay to Lessor Rent Charges at 1.75 times the current yearly rate during the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease.

**NON-WAIVER**: Any payment of Rent Charges and receipt by Lessor shall only be construed as being on account of the earliest stipulated unpaid amount due and irrespective of endorsements or statements on or accompanying the same. The waiver of any covenant or condition or the acquiesced breach by one party shall not be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance of the same or of any other covenant or condition hereof. The acceptance of Rent Charges by the Lessor at any time when the Lessee is in default under this Lease shall not be construed as a waiver of such default.

**NOTICES**: Whenever notice, consent or a demand is required or desired to be given, the same shall be given in writing, and shall be deemed to have been duly given or made when delivered personally, or transmitted by electronic mail (provided that a transmission error message is not received by sender), or in the case of documented overnight delivery service or registered or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the receipt therefor, in each case at the address set forth below or at such other address as may be specified from time to time in writing and mailed in like manner by either party to the other.

If to Lessor:
Property Manager: _____
[Address]: _____
[Address]: _____
E-Mail: _____

# KUSI-BRYANT REALTY LLC.
# LEASE

If to Lessee:
SperoHealth, LLC
[Address]: _____
[Address]: _____
E-Mail: _____

**BINDING EFFECT**: This Lease and all rights hereunder shall inure to the benefit of both parties and be binding upon their heirs, legal representatives, successors and assigns.

**SEVERABILITY:** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**GOVERNING LAW:** This Lease has been negotiated and delivered in the State of Ohio and shall in all respects be governed by, and construed in accordance with, the laws of the State of Ohio, including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions.

**TIME IS OF THE ESSENCE**: Time shall be of the essence for all events contemplated hereunder.

**AGREEMENT NEGOTIATED**: The parties are sophisticated and have been represented or had the opportunity to be represented in connection with the negotiation and performance of this Lease. The parties agree that no presumptions relating to the interpretation of contracts against the drafter of any particular clause should or may be applied in this case and, therefore, waive their effects.

**COUNTERPARTS:** This Lease may be executed in any number of counterparts, and by each of the parties on separate counterparts, each of which, when so executed, shall be deemed an original, but all of which shall constitute but one and the same instrument. Delivery of an executed counterpart of this Lease by facsimile, .pdf file, or other electronic means shall be equally as effective as delivery of a manually executed original counterpart of this Lease.

# KUSI-BRYANT REALTY LLC.
# LEASE

**COMMISSION**: Lessor has engaged Keller Williams Greater Columbus Realty LLC / KW Commercial in an exclusive Right to Sell/Lease agreement. Lessor shall pay a real estate commission of the total lease consideration per a separate agreement between Lessor and Lessee's agent.

**ENTIRE AGREEMENT**: This Lease, exhibits and riders, if any, attached hereto, sets forth all the covenants, promises, agreements, conditions and understandings between Lessor and Lessee concerning the Premises. No subsequent alteration, amendment, assignment, change or addition to the Lease shall be binding upon Lessor or Lessee unless reduced to writing and signed by both parties.

IN TESTIMONY WHEREOF, the parties have executed the foregoing Lease on the date specified above.

_____    _____
LESSOR                            LESSEE

_____    _____
LESSOR                            LESSEE

# KUSI-BRYANT REALTY LLC.
# LEASE

### Guaranty

The undersigned, _____("Guarantor"), hereby unconditionally guarantees to the Lessor the prompt performance and full payment when first due of all the obligations of the Lessee under the foregoing Lease. Prior to initiating any collection action against Guarantor, Lessor shall provide written notice (in accordance with the Notice section of the Lease) to Guarantor Address at:
: _____
: _____
of Lessee's default under the Lease, and Guarantor shall be entitled to a period of ten (10) days to cause said default to be cured. This Guaranty applies when the Lease commences and continues for all obligations of Lessee, thereafter, including during any extension or renewal of the Lease. This Guaranty, and the rights and the liabilities of the parties hereto, shall be governed in accordance with the laws of the State of Ohio. This Guaranty shall inure for the benefit of Lessor, his successors and permitted assigns.

Guarantor #1:
By:
Sign: _____  Phone #: _____
Date: _____

Guarantor #2:
By:
Sign _____  Phone #: _____
Date: _____

# KUSI-BRYANT REALTY LLC.
# LEASE

### Landlord's Acknowledgement

State of _____ )
                                       SS:
County of _____ )

The foregoing instrument was acknowledged before me this ___ day of _____,20__ by _____, as the _____ of Kusi-Bryant Realty LLC. an Ohio limited liability company, on behalf of the Limited Liability Company.

(Seal)  
My commission expires:              _____  
                                  Notary Public

### Tenant Acknowledgement

State of _____ )
                                       SS:
County of _____ )

The foregoing instrument was acknowledged before me this ___ day of _____,20__ by _____, as the _____ of Columbus Suboxone Doctors, LLC, an Ohio limited liability company, on behalf of the Limited Liability Company.

(Seal)  
My commission expires:              _____  
                                  Notary Public

### Guarantor Acknowledgement

State of _____ )
                                       SS:
County of _____ )

The foregoing instrument was acknowledged before me this ___ day of _____,20__ by _____, in their individual capacity.

(Seal)  
My commission expires:              _____  
                                  Notary Public