IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:17-CR-146(1) |
| vs. | : | CHIEF JUDGE MARBLEY |
| DARRELL BRYANT, | : | |
| ~~Defendant.~~ | : | |

## REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR HOME CONFINEMENT

The cases cited by Plaintiff rely on the presumption that the risk of COVID-19 reinfection is speculative because the defendants were asymptomatic and recovered from the first infection. Plaintiff relies on this same presumption and states that it is likely that I have developed antibodies which enhance my immunity to Covid-19 because I have "recovered" from the infection, even though a test has not been conducted to confirm my recovery. However, the evidence does not support Plaintiff's presumption. A study conducted by King's College London corroborates the findings of the research in China that immunity from Covid-19 is likely be short-lived, particularly for asymptomatic patients. *Study by King's College London finds a significant drop in antibody potency after three months* (July 13, 2020), https://www.sciencefocus.com/news/coronavirus-antibody-immunity-could-last-just-months/. The research, which is considered to be the first longitudinal study of its kind, found that "immunity antibodies decrease significantly in the three months following infection, leaving patients susceptible to reinfection . . . ." *Id*.

1

Other reports of reinfections have emerged since I submitted the motion for home confinement. Dr. Clay Ackerly, a Washington D.C.-based internist and former Harvard Medical School faculty member, has confirmed that his patient has been re-infected with Covid-19 – three months after a previous infection. Clay Ackerly, *My patient caught Covid-19 twice. So long to herd immunity hopes?*, https://www.vox.com/2020/7/12/21321653/getting-covid-19-twice-reinfection-antibody-herd-immunity (July 12 2020). "During his first infection, [the] patient experienced a mild cough and sore throat. His second infection, in contrast, was marked by a high fever, shortness of breath, and hypoxia, resulting in multiple trips to the hospital." Id. The severity of the second infection is similar to the severity of the confirmed reinfections in Los Angeles and Pakistan. *Id.* Likewise, the patient exhibited mild symptoms on the first infection and was found to be asymptomatic. *Id.* His recovery from the first infection was also confirmed by two negative PCR tests. *Id.* Dr. Ackerly confirmed that repeat infections in a short period of time are common for other coronaviruses. *Id.* So, it is not particularly unusual for Covid-19 to exhibit the same traits. *Id.*

Dr. Stuart Ditchek, A New Jersey-based clinical geneticist, has reported that "at least two of his patients have been re-infected with Covid-19 after testing negative for months in between." Jon Craig, *Central Jersey Doctor Reports Patients Reinfected With Coronavirus*, https://dailyvoice.com/new-jersey/monmouth/news/central-jersey-doctor-reports-patients-reinfected-with-coronavirus/790555/ (July 9, 2020). One of the re-infected patients "accumulated so many antibodies from his previous COVID-19 infection that he was able to donate plasma to other coronavirus patients two times." *Id.* Yet, he was re-infected after 7 weeks of testing negative for Covid-19. *Id.* It is likely that the antibodies accumulated by the patient decreased

2

significantly upon his recovery, exposing him to re-infection. This is consistent with the research findings of King's College London.

Several courts have acknowledged the risk of Covid-19 reinfection in granting compassionate releases. See *United States v Hanson* No. 6:13-cr-00378-AA-1 at *9 (D. Or. Jul. 2, 2020) (granting compassionate release, stating that "there is no current scientific evidence to indicate that a recovered COVID-19 patient is immune from reinfection."); *United States v. Common*, No. 17-CR-30067, 2020 WL 3412233 at *4 (C.D. Ill. June 22, 2020) (granting compassionate relief to a recovered inmate, reasoning that the risk of reinfection "is not merely theoretical"); *United States. v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020 (granting compassionate relief to defendant because "[a]lthough recovered, it is uncertain whether [the defendant] can contract COVID-19 more than once, and the potential long-term effects of the illness are still undetermined"); *United States v. Barajas*, No. 18-CR-736-4 (NSR) (S.D.N.Y. Jul. 6, 2020) (granting compassionate release to inmate with underlying medical conditions who was infected with Covid-19, but was asymptomatic, because of, among other things, the risk of reinfection); *United States v. Halliburton*, No. 17-CR-20028, 2020 WL 3100089, at *4 (C.D. Ill. June 11, 2020) (granting compassionate relief to a recovered inmate, explaining that the risk of relapse or reinfection is "very real")

Indeed, the risk of reinfection is "very real" in a prison like Elkton where social distancing is impossible because of the internal structure of the prison. Newly released data by Columbiana County health department public information officer, Laura Foss, suggests that some of the inmates at Elkton have already been re-infected. Ms. Foss reported that 920 inmates have tested positive for Covid-19 to date. Deanne Johnson, *49 more positives, no more deaths*, https://www.morningjournalnews.com/news/local-news/2020/07/49-more-positives-no-more-

3

deaths/ (July 14, 2020). However, as of July 14, 2020, BOP reports that 347 inmates are currently infected with Covid-19 and 621 inmates have recovered. https://www.bop.gov/coronavirus/. The sum of the infected inmates and the recovered inmates is 968, but the total number of infected inmates to date is 920. There appears to be an overlap between the number of currently infected inmates and the number of recovered inmates. This overlap suggests that 48 inmates who had previously recovered were re-infected and added back to the list of infected inmates.

The Court has previously stated that it is convinced that I don't pose a threat to anyone. *See* Doc. 128. Indeed, I do not; I maintain my innocence against any allegation of sexual assault. I was convicted of a financial crime involving a business which is no longer in operation. Upon the reinstatement of my bond, I abided by the Court's instructions until I reported to Elkton and will continue to do so if my motion is granted. In addition, the warden acknowledged in his reply to my email requesting for home confinement that my Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score is LOW; this means that I am at a low risk for reoffending and eligible for home confinement.

In *United States v. Agomuoh*, No. 16-20196 (E.D. Mich. May. 18, 2020), the Court granted a motion for compassionate release even though the defendant had served less than 25% of the sentence, because "the conditions of his confinement exposed him to a substantial risk of contracting Covid-19." Likewise, the conditions at Elkton expose me to a substantial risk of reinfection because the internal structure of Elkton makes it impossible to practice social distancing. See *United States v. McKinney*, 18-CR-6035L, (W.D.N.Y. Jun. 4, 2020) (granting compassionate release even though defendant had served less than 25% of a 120-month sentence, finding that the defendant was susceptible to a covid-19 infection because, among

4

other factors, social distancing was virtually impossible); *United States v. Walker*, No. 11-cr-381 (SRN/HB) (D. Minn. Jun. 26, 2020) (granting compassionate release even though inmate had served less than 25% of a 300-month sentence); *United States v. Delgado*, No. 3:18-cr-17-(VAB)-1, 2020 WL 2464685, at *1, 4 (D. Conn. Apr. 30, 2020) (granting compassionate release even though inmate had served less than 25% of a 120-month sentence).

In *United States v. Rahim*, No. 16-20433 at *2, 7 (E.D. Mich. May. 21, 2020), the Court granted compassionate release, even though defendant had served less than 25% of a 72-month sentence, finding that releasing the defendant to home confinement would satisfy the statutory goal of imposing punishment because he would continue to bear additional restrictions on his liberty. Similarly, modifying the terms of my imprisonment will not undermine the goal of general deterrence because I will continue to bear restrictions on my liberty through home confinement.

## CONCLUSION

The reports of Covid-19 reinfections by Dr. Ackerly, Dr. Ditchek, and Dr. Salman Kazmi in New Jersey, Washington D.C., and Pakistan confirm that reinfection is a threat which brings forth severe symptoms even in patients who recovered from the first infection without suffering harsh effects. Such severe symptoms could lead to death. The risk of reinfection is heightened in an environment like Elkton where social distancing is impossible as a result of the internal structure.

Therefore, I respectfully request the Court to grant the motion for home confinement because my continued stay at Elkton places me at a risk of losing my life.

Dated July 15, 2020.

Respectfully submitted

*Darrell Bryant*

Darrell L. Bryant
3217 Walkerview Dr.
Hilliard, OH, 43026
Phone (309) 8680958